# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2968-18T1

F.A.,

    Plaintiff-Appellant,

v.

C.L.M.,

    Defendant-Respondent.

_____

        Argued telephonically May 6, 2020 –
        Decided June 1, 2020

        Before Judges Koblitz, Whipple and Mawla.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0315-17.

        Francine Del Vescovo argued the cause for appellant (Lomberg & Del Vescovo, LLC, attorneys; Francine Del Vescovo and Paul C. Lomberg, on the briefs).

        C.L.M., appellant, argued the cause pro se.

PER CURIAM

Plaintiff F.A.[1] appeals from a February 14, 2019 order entered following a post-judgment trial related to custody and parenting time of the parties' fourteen-year-old daughter. We affirm.

In June 2009, plaintiff and defendant C.L.M. divorced following a seven and one-half year marriage. Their Property Settlement Agreement (PSA) provided for joint legal custody of their daughter and awarded plaintiff parenting time on alternating weekends, two evenings per week, and vacation and holiday parenting time. Although the divorce settled, extensive litigation marked the pendente lite period, including the involvement of the Division of Child Protection & Permanency (Division) and New York Office of Children and Family Services.

In December 2010, defendant moved to limit plaintiff's parenting time. At the time, plaintiff had been exercising only intermittent overnight parenting time since the divorce. In response, plaintiff filed an emergent application to enforce parenting time in accordance with the PSA.

In April 2011, the Division became involved with the family, based on reports by the parties' daughter that plaintiff inappropriately touched her. The

---

[1] We use initials to protect the confidentiality of the parties and their child. See R. 1:38-3(d).

A-2968-18T1

court ordered supervised parenting time for plaintiff and the child's participation in psychological and psychosocial evaluations, which resulted in a recommendation for individual and joint therapy for plaintiff and the child.

The matter was venued in Hudson County. The court appointed a guardian ad litem for the child in January 2014. In June 2014, the child was psychiatrically hospitalized with a diagnosis of suicidal ideation and post-traumatic stress disorder. As a result, the court appointed a psychologist to perform a psychological evaluation of the child and ordered the child to begin psychotherapy and continue reunification therapy.

On June 18, 2015, the court entered an order incorporating the recommendations of the court-appointed psychologist and ordered: (1) the child continue in weekly treatment with her psychotherapist and psychiatrist; (2) cessation of reunification therapy with plaintiff until the child's therapist deemed her "emotionally stable and resilient enough to cope effectively with the stress inherent in such a process;" (3) "no pressure [be] placed by anyone upon [the child] to have contact with her father;" (4) bimonthly meetings between the parties, the child's therapist, and psychiatrist; (5) plaintiff "enroll in a course [on] child development, including training [on] communication skills with children;" and (6) parent coordination therapy.

A-2968-18T1

In August 2016, plaintiff moved to enforce the June 2015 order. In the interim, the matter was transferred from Hudson to Bergen County and following the transfer, the court appointed a new guardian ad litem for the child and scheduled a plenary hearing. Plaintiff also moved for the court to consider whether defendant engaged in parental alienation, and if custody should be modified and the child compelled to enroll with him in a reunification program at Turning Points for Families. Defendant cross-moved to reopen the Division's 2011 abuse investigation, which had concluded with no finding of abuse by plaintiff. She also sought sole legal custody.

A sixteen-day trial began in December 2018. The trial judge heard testimony from plaintiff, an expert psychologist specializing in parental alienation, and the administrator of the Turning Points program. The judge considered testimony from defendant, three of her friends, and the father of defendant's youngest child. The guardian ad litem also testified.

Plaintiff's psychological expert set forth a five-factor model she claimed was used to determine whether a child rejecting a parent should be considered alienated as opposed to estranged, and in the case of the former, testified regarding potential remedies. The expert conceded she did not receive updated information, which revealed the child changed her attitude toward plaintiff and

was open to seeing him. The judge concluded the expert's testimony and 2017 report were "stale" and unreliable because she did not interview the parties, the child, the guardian ad litem, or any professional treating the child or providing reunification therapy and relied exclusively on documents plaintiff's attorney provided, which largely included the records relating to the 2011 abuse allegations.

The Turning Points program administrator described the program as a four-day intervention in which the child and the rejected parent engage in various activities together, followed by a transfer of custody and a ninety-day no contact period vis-à-vis the alienating parent, during which the program collaborates with the rejected parent's therapist and the family therapist to achieve reunification.

The judge rejected the testimony finding the program administrator also failed to interview the parties, the child, the guardian ad litem, and the treating therapeutic professionals. The judge further noted the administrator advocated for a radical intervention but cited no authority or learned treatise to support this methodology and failed to acknowledge the adverse effects of such an intervention on the child, given her history of suicidal ideation. Moreover, the judge concluded the facts, when applied to the five factors plaintiff's

psychological expert proposed, did not support the finding of alienation necessary to require the child's enrollment in Turning Points.

The guardian ad litem testified he met with the child and her therapist approximately eight to ten times beginning in January 2017 and reviewed the records related to the abuse allegations. He concluded the child was psychologically fragile, and her reactions to seeing plaintiff ranged from recoiling, to meltdowns, to physical aggression. He opined reunification was a "commendable goal." However, because of the child's condition, his

> opinion was [plaintiff's proposed] program would traumatize [the child] and . . . she was traumatized enough. I believe that sending her on her own to this facility, whether or not intensive reunification therapy was justified, I didn't think over a weekend it could accomplish . . . significant change . . . in her belief and that sending her to live with [plaintiff] for [ninety] days thereafter would be just a terrible thing for her . . . . And I just think she's too upset about . . . the whole concept of having even contact with her father, she still is, but not to that extent. . . . [T]he therapy within which she's been involved . . . seems to be working. She seems to be getting less and less angry which is ultimately, I would suspect, going to lead to some successful reunification therapy.

He also opined that "while not yet ready to engage in individual parenting time with [plaintiff], [the child] has not rejected . . . engaging in some sort of

reunification therapy." The judge credited the guardian ad litem's testimony and noted it was consistent with and corroborated defendant's testimony.

Defendant's friends were enlisted to escort the child to reunification therapy to assure defendant did not influence the child during these sessions. Each friend testified the child reacted fearfully when plaintiff arrived at therapy. The judge found all three witnesses credible.

Plaintiff's testimony recounted the pendente lite and post-judgment history of his parenting time and participation in reunification therapy. It also established he unilaterally ceased attending reunification therapy in December 2013, causing the reunification therapist to quit. As a result, the last supervised parenting time occurred in March 2014 and plaintiff testified he had not seen the child since 2015. His testimony corroborated defendant's friends' observations the child was clingy, nervous, and afraid after spending time with him, and that when reunification therapy was attempted, she would cry, become emotional, or not want to attend school afterwards. Plaintiff's testimony also revealed he was either unaware or unsupportive of the child's activities, interests and needs. Further, the judge noted when the reunification therapist prepared a reunification plan, defendant accepted it, but plaintiff, who lacked therapeutic expertise, attempted to dictate the information that would be shared with the child

7

regarding the reasons for the therapy, ignoring the advice of the therapist and the guardian ad litem.

The trial judge concluded plaintiff failed to prove defendant alienated the child. He stated:

> No person testified to support the plaintiff's assertions[, and t]o the contrary, several people testified that the defendant had taken steps to minimize the risk of interference by arranging for transportation of [the child] to meetings with her father to be done by others. As noted hereinbefore, three witnesses testified as to what transpired and how fearful [the child] is of her father.
>
> . . . [T]he lack of perceived progress by the father in cultivating a relationship with his daughter, is somewhat his own doing. He must address the concerns referred to in this [o]pinion and the . . . June 18, 2015 [order], especially the individual therapy contained in prior [o]rders which the plaintiff had unilaterally terminated.
>
> . . . [T]he evidence demonstrated that there has been justified and realistic estrangement.
>
> Here, plaintiff has not demonstrated that [defendant] has embarked on a campaign of denigration and hatred against [him] and finds that the opposite is true.

Finding no alienation, the judge denied plaintiff's request to modify custody and parenting time and compel the child to participate in the Turning Points program.

A-2968-18T1

The judge analyzed the N.J.S.A. 9:2-4(c) factors, concluded the majority of the factors weighed in favor of modifying legal custody, and ordered that the parties would continue to share joint legal custody regarding financial matters affecting the child, but that defendant would have sole decision making authority on matters related to the child's health, education, and welfare. The judge also ordered the child to continue in therapy and the parties to share the cost and ordered the plaintiff to restart reunification therapy.

## I.

Our scope of review of Family Part orders is limited. We owe substantial deference to a Family Part judge's finding of facts because of that court's special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Our "[d]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Deference is also afforded to "credibility determinations . . . because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412).

We owe no special deference to the judge's legal conclusions. Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). However, we

A-2968-18T1

"'should not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or when we determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (alteration in original) (quoting Cesare, 154 N.J. at 412).

On appeal, plaintiff argues that the trial judge incorporated without testimony the findings from the 2015 report issued by the court-appointed psychological expert, which was not in evidence, in violation of Rule 5:3-3(f) and (g).  Plaintiff also argues that the judge failed to give the appropriate weight to his expert, and deferred greatly to the guardian ad litem, who did not meet with plaintiff as often as he did with defendant.  He asserts the judge cited testimony the guardian did not give, did not order reunification therapy despite the parties' agreement, and failed to articulate a plan to address parenting time going forward.

A.

Rule 5:3-3 states:

> (f) Submission of Report.  Any finding or report by an
> expert appointed by the court shall be submitted upon
> completion to both the court and the parties.  At the
> time of submission of the court's experts' reports, the

reports of any other expert may be submitted by either party to the court and the other parties. The parties shall thereafter be permitted a reasonable opportunity to conduct discovery in regard thereto, including, but not limited to, the right to take the deposition of the expert.

(g) Use of Evidence. An expert appointed by the court shall be subject to the same examination as a privately retained expert and the court shall not entertain any presumption in favor of the appointed expert's findings. Any finding or report by an expert appointed by the court may be entered into evidence upon the court's own motion or the motion of any party in a manner consistent with the rules of evidence, subject to cross-examination by the parties.

As we recounted, the trial judge did not rely on the court-appointed expert report in determining whether defendant engaged in alienation. The judge drew his conclusions largely from the testimonial evidence, which established an absence of support for plaintiff's assertions, and evidence corroborating the conclusion that the child was instead estranged from him.

Additionally, the June 8, 2015 order incorporated and adopted the recommendations of the court-appointed expert. Part of the trial judge's task was to adjudicate plaintiff's claim that defendant failed to comply with the order and whether to modify custody as a result. To those ends, plaintiff's psychological expert testified she reviewed the court-appointed expert's notes

and report and relied on the report multiple times during her testimony to explain why there was non-compliance and parental alienation.

Contrary to plaintiff's argument, the facts here are dissimilar from <u>Matter of Guardianship of J.C.</u>, 245 N.J. Super. 373 (App. Div. 1991). There, we concluded the trial court committed reversible error by relying on a post-trial bonding evaluation without affording a parent an opportunity to review the evaluation, cross-examine the evaluator, or present rebuttal evidence. <u>Id.</u> at 376. <u>See also</u> <u>Rente v. Rente</u>, 390 N.J. Super. 487, 495 (App. Div. 2007) (holding the trial judge erred in admitting a court-appointed psychologist's report into evidence without offering a party the opportunity to obtain her own expert or providing a copy of the report to review prior to the hearing, nor affording a reasonable opportunity to depose the expert and make him available for cross-examination.).

The facts here are inapposite because the judge did not rely on the non-testifying expert's opinion, and plaintiff had the opportunity to address the efficacy of the recommendations and suggest an alternative to the court. Therefore, the judge's mention of the expert's findings was not an abuse of discretion and not "clearly capable of producing an unjust result." <u>R.</u> 2:10-2.

A-2968-18T1

B.

We reject plaintiff's assertion that the trial judge failed to give his expert's testimony the weight it deserved and accorded greater weight to the guardian ad litem's testimony.  As a general proposition,

> expert testimony need not be given greater weight than other evidence nor more weight than it would otherwise deserve in light of common sense and experience.  In re Yaccarino, 117 N.J. 175, 196 (1989).  The factfinder may accept some of the expert's testimony and reject the rest.  Todd v. Sheridan, 268 N.J. Super. 387, 401 (App. Div. 1993).  That is, a factfinder is not bound to accept the testimony of an expert witness, even if it is unrebutted by any other evidence.  Johnson v. Am. Homestead Mortgage Corp., 306 N.J. Super. 429, 438 (App. Div. 1997).
>
> [Torres v. Schripps, Inc., 342 N.J. Super. 419, 430-31 (App. Div. 2001); accord State v. M.J.K., 369 N.J. Super. 532, 549 (App. Div. 2004).]

The trial judge explained in detail why he declined to give plaintiff's expert testimony greater weight.  She never interviewed the parties, the child, the guardian ad litem, or any of the other witnesses.  Plaintiff's expert conducted no objective psychological testing, failed to interview the child or the family's treatment providers, and relied solely on documents plaintiff's attorney provided.  The expert did not have any recent documentation regarding the child's progress in therapy.

13

Moreover, the judge concluded the expert lacked clinical or therapeutic expertise. For these reasons as well, the judge did not err in concluding the expert could not recommend a course of therapy for parental alienation.

Plaintiff asserts the judge gave too much credit to the guardian ad litem's testimony and miscredited the guardian ad litem with testifying that the child vomited when thinking of her father. Although the guardian ad litem did not testify the child vomited at the thought of her father, he did offer evidence of the child's adverse reactions to plaintiff, which the judge properly found credible.

Moreover, the record contained many other instances of the child manifesting psychosomatic symptoms at the thought of interacting with her father. Indeed, defendant testified the child would cry, become hysterical, not want to go to school on the days she had therapy with plaintiff, and urinate on herself in the elevator on the way to reunification therapy. Defendant's friends, who accompanied the child to therapy, testified the child was afraid when plaintiff came to therapy sessions; one recalled she was "crying" and "hyperventilating" at the mention of plaintiff. The father of defendant's youngest child also testified the child had nightmares, was scared, and cried often.

14

The judge's mis-recollection of one fact from the guardian ad litem's testimony was harmless error.  R. 2:10-2.  The substantial credible evidence in the record supported the guardian ad litem's testimony and did not negate the judge's overall factual conclusions and credibility determinations.

C.

Plaintiff argues the trial judge erred in failing to compel participation in the Turning Points reunification program.  He asserts traditional therapy would "continue to perpetuate the mother/daughter dynamic that . . . caused the problem in the first place."  He argues that because both parties supported reunification therapy, we should remand and direct the trial judge to select a reunification therapist.  We disagree.

The trial judge ordered the child to continue with weekly scheduled therapy and plaintiff to restart the previously ordered therapy sessions, based on the credible evidence adduced at trial showing the child progressed in therapy and demonstrated less hostility toward plaintiff.  The greater weight of the evidence does not support plaintiff's argument that enrollment of the child in Turning Points would do anything but cause her to regress.  The plan the judge articulated was reasonable and amply supported by the substantial credible evidence in the record, and we decline to disturb it.

15

Finally, defendant argues that because she complied with the June 2015 order and plaintiff acted in bad faith by unilaterally ending reunification therapy, the trial court should have awarded her counsel fees. Defendant made no application for counsel fees to the trial judge. We do not consider claims asserted for the first time on appeal, which were not presented to the trial court. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION